Robert B. Miller, Appellant, v. Alice L. Miller, Respondent.

First Department, March 22, 1973.

*Joel S. Stern* of counsel (*Maass Levy Friedman Hirsch & Stern,* attorneys), for appellant.

*Lester Lichter* for respondent.

McGIVERN, J. P. This is an appeal from an order entered January 21, 1971, Supreme Court, New York County (SPIEGEL, J.), partially granting motion to confirm Referee's report in respect of support of the defendant and for the education and support of the children of the parties, and directing the posting of a bond. We affirm, with costs.

The Special Referee found that while the defendant wife was in the hospital, May, 1966, the children were permitted to "visit" her divorced husband in Connecticut, he, a psychiatrist, having then remarried; to be exact, he married a patient, after a Mexican divorce. In August, she, the wife herein, requested the return of the children, custody having been previously awarded her by the New York courts in 1963, and reaffirmed by a modified order, dated February 9, 1966. Instead of returning the children, he entered into Connecticut litigation, forcing his wife (the defendant) to undertake the needless expense of battling him through the Connecticut courts although she held a New York decree in her favor. On final appeal, the Supreme Court of Connecticut, in 1969, stated: " it is settled in Connecticut that a custody decree rendered by a sister state is entitled to full faith and credit provided that the court which rendered the decree had jurisdiction. * * * Therefore, the trial court was correct in holding that the Probate Court committed error by not recognizing the New York custody decree under the full faith and credit clause of the United States constitution." (*Miller* v. *Miller,* 158 Conn. 217, 220, 222.) Not satisfied, the husband entered the Federal courts, extending the needless litigation until November 24, 1969, when certiorari to the Supreme Court was denied, although since August 1966, he had been in utter contempt of an order of the Supreme Court of the State of New York.

We find the minority view irreconcilable with the case cited in support of their own conclusion, which, to the contrary, stands for the holding a husband cannot flout an order of a New York court and profit by his own intransigence. (*Denberg* v. *Frischman,* 26 A D 2d 266.) Said STEUER, J. (p. 267): " It is recognized that the situation most frequently arises where the husband flouts the order of the court by either interfering with **the wife's**

custody or influencing the children to stay away from the home she has provided for them. A strong public policy warrants recovery as a preventive of this type of conduct. (*Nichols* v. *Nichols*, 306 N. Y. 490; *Olmstead* v. *Olmstead*, 24 A D 2d 605, affd. 18 N Y 2d 652.)" Later cases have reasserted the same elementary principle. (*Abraham* v. *Abraham*, 28 A D 2d 864; *Goldberg* v. *Berger*, 31 A D 2d 637.)

Thus, we agree with Special Term's characterization of the husband's conduct: " Contumacious refusal to comply with custody orders." And we agree also with the finding of the Referee: " The plaintiff should not be rewarded for unlawfully keeping the children in violation of the order of this Court." Any other view would work havoc and raise hob with the custody decrees of our New York courts.

In voting to affirm, it is our view that, if anything, Special Term was overly generous in crediting him for support until January 23, 1968, when the stay he achieved in the Connecticut courts expired.

KUPFERMAN, J. (dissenting in part). I would modify to exclude from child support payments the period from January 23, 1968 to November 24, 1969.

The parties married in 1943 and were divorced by a Mexican decree in 1961. A separation agreement and a later order of the Supreme Court, New York County, on consent, provided for alimony and custody in the wife of the two children, and child support in the amount of $1,000 per annum for each child.

The wife and the two children lived in New York City. The husband remarried and moved to Connecticut. In 1966, while the mother was in the hospital, the children were sent by her brother to live with the father in Connecticut. Upon her release from the hospital, the mother requested the return of the children and was refused. A Connecticut court proceeding was commenced by the husband to remove the former wife as guardian, which proceeding was ultimately unsuccessful, culminating in a denial on November 24, 1969 of a writ of certiorari to the United States Supreme Court.

The court at Special Term, among other things which we have unanimously confirmed, found the plaintiff to have defaulted in payments of child support since 1966, giving credit not only for the four months when he had temporary custody on consent during the period of illness, but also until Janury 23, 1968 when his Connecticut court stay terminated. The husband contends that inasmuch as he had actual care of the children (one child returned to the mother in January, 1971), legitimately **obtained,**

he should not have to pay for child support. Inasmuch as the husband had the children in his care and made the expenditures therefor, there would necessarily be duplication by any payment to the wife covering that period. (See 2 Foster-Freed, Law and the Family, Modification of Provisions For Support of Children, § 26:25, p. 332.) However, she contends that she maintained a home for them. Accordingly, bearing in mind both that the wife should not receive a windfall, and that the husband should not be permitted to flout the custody order of our court (see *Denberg* v. *Frischman,* 26 A D 2d 266 [1st Dept., 1966]), we should provide that he should pay for child support commencing with the period when all legal proceedings in the Connecticut jurisdiction terminated by the denial of certiorari by the United States Supreme Court.

MURPHY and TILZER, JJ., concur with McGIVERN, J. P.; KUPFERMAN, J., dissents in part in an opinion in which NUNEZ, J., concurs.

Order and judgment (one paper), Supreme Court, New York County, entered on January 21, 1972, affirmed; and respondent shall recover of appellant $60 costs and disbursements of this appeal.