IN RE HELEN B.*
(AC 16404)

Lavery, Spear and Daly, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 17—officially released November 3, 1998

*Sara R. Martin,* for the appellant (respondent).

*Michael H. Dardzinski,* with whom was *Robert A. Solomon,* for the appellee (petitioner).

*Justino Rosado,* for the minor child.

*Opinion*

LAVERY, J. The respondent father appeals from the judgment of the trial court removing him as guardian

of his minor child, who was born in 1983. On appeal, the respondent claims that (1) the trial court improperly permitted the petitioner to amend the petition after the matter was transferred from the Probate Court to the Superior Court, (2) he was denied due process of law and (3) the trial court improperly found that he had denied his child the care, guidance or control necessary for physical, educational, moral or emotional well-being as a result of acts of parental commission or omission to the present time pursuant to General Statutes § 45a-610 (3). We affirm the judgment of the trial court.

On December 24, 1992, the child's mother and the petitioner, the child's maternal aunt, filed two applications in the Court of Probate for the District of New Haven. One application sought the appointment of the petitioner as temporary custodian of the child; the other sought to remove the mother and the respondent as her guardians. At that time, the mother, who was terminally ill and unable to care for the child, consented to her removal as guardian of the child, as well as to joint custody of the child with the aunt. The child and her mother resided with the aunt. The mother died on November 10, 1993. On December 1, 1993, the Probate Court granted temporary custody of the child to the aunt, pending completion of a guardianship study to be prepared by the department of children and families pursuant to General Statutes § 45a-607.

In January, 1994, on the eve of the permanent custody hearing, the respondent moved, pursuant to General Statutes § 45a-623,[1] to transfer the petition to the Superior Court. The original petition for removal of the

---

[1] General Statutes § 45a-623 provides: "In any proceeding under sections 45a-603 to 45a-622, inclusive, that is contested, the Court of Probate shall, upon motion of any party other than a party who made application for the removal of a parent as a guardian, under rules adopted by the judges of the Supreme Court, transfer the case to the Superior Court. Upon transfer, the clerk of the Court of Probate shall transmit to the clerk of the Superior Court the original files and papers in the case."

respondent as the child's guardian was based on the allegation of abandonment. General Statutes § 45a-610 (2). Following the transfer of the petition to the trial court, the petitioner moved to amend the petition to add allegations of acts of parental commission or omission; General Statutes § 45a-610 (3); as the basis for removal of the respondent as the child's guardian.[2] The trial court held a hearing on the removal petition on numerous days over an extended period of time and rendered judgment removing the respondent as guardian of the child for acts of parental commission or omission. This appeal followed.

The trial court found that until the child was eight years old, she resided with her parents and her half-brother and half-sister, both children of her mother. The parents' relationship was marred by repeated episodes of domestic violence and substance abuse, particularly by the mother. The petitioner assisted the family by caring for the children when domestic violence or substance abuse prevented the mother from doing so.

The petitioner and the respondent were often in disagreement and conflict. In 1980, before the child was born, the petitioner reported to the department that the respondent had sexually abused the half-sister, who was seven years old at the time. The half-sister left her

[2] General Statutes § 45a-610 provides in relevant part: "If the Court of Probate finds that notice has been given or a waiver has been filed, as provided in section 45a-609, it may remove a parent as guardian, if the court finds by clear and convincing evidence one of the following . . . (2) the minor child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility for the minor's welfare; or (3) the minor child has been denied the care, guidance or control necessary for his or her physical, educational, moral or emotional well-being, as a result of acts of parental commission or omission, whether the acts are the result of the physical or mental incapability of the parent or conditions attributable to parental habits, misconduct or neglect, and the parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not in the best interests of the minor child be permitted to exercise, parental rights and duties at this time . . . ."

mother's home for a brief time, but the respondent's sexual abuse of her continued from the time the girl returned home until she was fourteen. For a short period of time, the half-sister sold cocaine for the respondent.

The respondent has engaged in illegal activity over the years. He was arrested on numerous occasions for drug and weapons possession, although he was not convicted as a result of these arrests. He also sold liquor from the home he shared with the children and their mother. When the respondent ceased living with the child's mother, he agreed to let the child stay with her mother and be assisted by the petitioner. The respondent made no effort to obtain custody of the child until her mother died. The respondent is unemployed and does not support the child. The respondent does, however, continue to visit the child and to buy her meals and clothing, and he has a warm and loving relationship with her.

The department and Anthony Campagna, a psychologist, conducted evaluations of the child and recommended that she live with the petitioner and visit the respondent. The child's stated preference is to live with the petitioner and to visit with the respondent.

I

The respondent's first claim is that the trial court improperly granted the petitioner's motion to amend the removal of guardian petition because (1) the petitioner is not a person authorized to amend the petition, (2) the trial court is without authority to amend a removal petition and (3) the amendment was in violation of his right to due process. "We will not disturb the trial court's decision to allow amendments to the petition unless there has been an abuse of discretion." *In re Angellica W.*, 49 Conn. App. 541, 548, 714 A.2d 1265 (1998).

## A

First, the respondent claims that the petitioner is not among the class of persons permitted to amend a petition for removal of parent as guardian.[3] General Statutes § 45a-614 applies, which provides in relevant part: "The following persons may apply to the court of probate for the district in which the minor resides for the removal as guardian of one or both parents of the minor: (1) Any adult relative of the minor, including those by blood or marriage . . . ." The petitioner is the child's maternal aunt, a blood relative. Because the petitioner has standing to bring a petition to remove the respondent as the child's guardian, she also has standing to move to amend the petition.

## B

The respondent next claims that the trial court is without authority to amend a petition for removal of guardian that was commenced in the Probate Court. We disagree.

Section 45a-623 authorizes the transfer of a removal of guardian proceeding from the Probate Court to the Superior Court; rule 8 of the Probate Rules of Practice and Procedure provides the mechanism by which the transfer is to be accomplished.[4] Following the transfer of the matter to the trial court, Practice Book § 1-1 (a) governs the proceedings on the petition. "The rules for the superior court govern the practice and procedure in the superior court in all civil and family actions whether

[3] The respondent relied on General Statutes § 46b-129 for his position. We note that the respondent repeatedly relied on statutes and case law dealing with neglected, uncared-for or dependent children and termination of parental rights; General Statutes §§ 46b-120 through 46b-151g; rather than General Statutes §§ 45a-603 through 45a-624g, which are the applicable provisions.

[4] Rule 8 is titled, "Transfers of Contested Petitions for Removal of Parent as Guardian from Courts of Probate to the Superior Court for Juvenile Matters."

cognizable as cases at law, in equity or otherwise, in all criminal proceedings and *in all proceedings on juvenile matters. . . .*" (Emphasis added.) Practice Book § 1-1 (a), formerly § 1. The case before us is a juvenile matter in the Superior Court and is therefore governed by the rules of practice for the Superior Court.

The applicable rule is Practice Book § 35-1 (c), formerly § 1055.1, which provides in relevant part: "A petition may be amended at any time by the judicial authority on its own motion or in response to the motion of any party prior to any final adjudication. When an amendment has been so ordered, a continuance shall be granted whenever the judicial authority finds that the new allegations in the petition justify the need for additional time to permit the parties to respond adequately to the additional or changed facts and circumstances."

Here, the timing of the trial court's granting of the petitioner's motion to amend is similar to that of *In re Carl O.*, 10 Conn. App. 428, 523 A.2d 1339, cert. denied, 204 Conn. 802, 525 A.2d 964 (1987). In each case, the trial court granted a petitioner's motion to amend at or near the start of trial. In each instance, the trial court, in accordance with § 35-1, offered to continue the trial so that the respondent could adequately prepare to respond to the amendment. In the present case, the start of trial was actually continued for approximately four months from the date of the granting of the motion to amend. This court recently decided another case concerning an amended petition, stating that "[t]he trial court . . . correctly pointed out that 'actually, it's a matter of proof . . . rather than whether they have the right to amend. I think they have the right to amend, to allege whatever they want and the burden is on them to prove whatever they allege.' Furthermore, Practice Book § [35-1] provides that amendments to the petition may be made at any time prior to a final adjudication."

*In re Angellica W.*, supra, 49 Conn. App. 548. Because the rules of practice permit amendment, the trial court had discretion to allow the petitioner to amend the removal petition.

C

The respondent's final claim with respect to the amended petition is that the granting of the amendment denied him due process of law. We disagree.

The crux of the respondent's argument is that the removal petition was based on abandonment and that was the basis on which the Probate Court granted the petitioner temporary custody of the child. For two years, the respondent prepared to defend the charge of abandonment only to learn four months before trial that the petitioner was going to proceed on a charge of parental acts of commission or omission, as well. As the trial court noted in *In re Angellica W.*, supra, 49 Conn. App. 548, the issue is a matter of proof, not of amendment. The facts of this case did not change between the time the petitioner was granted temporary custody of the child and the date the trial on the removal petition began. In November, 1994, the petitioner believed the facts also supported a charge of acts of commission or omission, in addition to abandonment. At all times, the respondent was aware of the facts, including behavior on his part to which the petitioner objected, which were the basis of her legal theory to end his guardianship of the child.

The respondent also claims that continuing the trial from November, 1994, until March, 1995, constituted an unreasonable delay. The respondent has failed to identify, however, any authority to support his claim that the four month continuance under the circumstances was unreasonable, when the purpose of the continuance was to permit him to prepare adequately

to defend against the amended petition. See Practice Book § 35-1 (c). This claim, therefore, is without merit.

## II

The respondent's second claim is that his right to due process was denied by the procedure and law applied by the trial court. The respondent, however, cited no law in support of his position. The only law cited by the respondent concerns termination of parental rights. As previously discussed in this opinion, the procedures employed by the trial court in this matter comport with the rules of practice and the laws of this state with respect to the removal of a parent as guardian.

Furthermore, the consequences of the removal of a parent as guardian of a minor child are far from the drastic results that occur when parental rights are terminated. See *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986) ("termination of parental rights is the ultimate interference by the state with the natural rights of parents in their children, resulting in everlasting severance of the legal relationship, and usually the permanent separation of parent and child as well"). Removal of a parent as guardian does not terminate the parent's right to see the child and to be involved in the child's life. In fact, General Statutes § 45a-612 specifically provides for the visitation rights of a parent removed as guardian. Moreover, General Statutes § 45a-611 provides for the reinstatement of a parent as guardian of the person of a minor, if appropriate. In this case, the trial court ordered that the petitioner be granted "the right of reasonable visitation . . . including such reasonable overnights, weekends and vacations as the father and child both request, for which permission shall not be unreasonably withheld." The respondent's right to due process with respect to his guardianship of his child has not been denied.

## III

The respondent's final claim is that the trial court improperly found that he denied the child the care, guidance or control necessary for her physical, educational, moral or emotional well-being as a result of his acts of parental commission or omission to the present time. See General Statutes § 45a-610 (3). Specifically, the respondent claims that the trial court improperly admitted evidence of his having been arrested for drug and weapons possession, and that there was no evidence that he denied the child care, guidance and control. We do not agree.

"The legislature has set the standard that governs a petition for the removal of a surviving parent as the guardian of his or her children." *Garrett's Appeal from Probate*, 237 Conn. 233, 235, 676 A.2d 394 (1996). " 'The father and mother of every minor child are joint guardians of the person of the minor . . . . If either father or mother dies . . . the other parent of the minor child shall become the sole guardian of the person of the minor.' General Statutes § 45a-606. The court may remove a parent as guardian only if it finds by clear and convincing evidence that one or more of the grounds enumerated in General Statutes § 45a-610 have been proven by clear and convincing evidence." *Garrett's Appeal from Probate*, 44 Conn. Sup. 169, 171, 677 A.2d 1000 (1994) aff'd, 237 Conn. 233, 676 A.2d 394 (1996). We are aware, however, that "[t]he provisions of sections 45a-603 to 45a-622, inclusive, shall be liberally construed in the best interests of any minor child affected by them, provided the requirements of such sections are otherwise satisfied." General Statutes § 45a-605 (a).

"The award of the custody of a minor child is a matter within the sound discretion of the trial court. *Scott* v. *Furrow*, 141 Conn. 113, 120, 104 A.2d 224 [1954]; *Morrill*

v. *Morrill*, 83 Conn. 479, 489, 77 A. 1 [1910]. We review the award to determine whether that discretion has been abused and whether the trial court, in the exercise of its discretion, has overlooked or misapplied some established principle of pertinent law. *Anderson* v. *Anderson*, 122 Conn. 600, 603, 191 A. 534 [1937]; *Morrill* v. *Morrill*, supra." *Antedomenico* v. *Antedomenico*, 142 Conn. 558, 561, 115 A.2d 659 (1955).[5]

## A

The respondent's first claim is that evidence of arrests not resulting in convictions is inadmissible. The respondent argues that his arrest record should not have been admitted to impugn his credibility or as evidence of his bad character or criminal tendencies. We are not persuaded because the evidence was not admitted for either of those purposes.

"At the outset, we note that we will set aside a trial court's evidentiary ruling only where there has been a clear abuse of discretion." *In re Adalberto S.*, 27 Conn. App. 49, 57, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992). To determine whether the trial court abused its discretion, we are mindful of the criteria relevant in matters concerning the removal of the parent as guardian where the father is alleged to have denied his child the care, guidance or control necessary for her physical, educational, moral or emotional well-being as a result of *parental habits or misconduct.*

---

[5] In *Antedomenico*, the minor child's father sought to regain custody of his son, who was then eleven years of age. The child was born shortly before his father entered the army in 1943. While the father was away, the mother lived with her mother and subsequently lost interest in both her husband and her child. The child's maternal grandmother was granted custody. When the father returned, he divorced the child's mother and subsequently remarried. The father then attempted to regain custody of the child, but the court determined that it was not in the best interest of the child to remove him from the custody of his grandmother, with whom he had resided since infancy. See *Antedomenico* v. *Antedomenico*, supra, 142 Conn. 563.

See General Statutes § 45a-610 (3). When ruling on the admissibility of the police officers' testimony concerning the respondents' arrests for drug and weapons possession, the trial court was fully aware of the criteria and the nexus between evidence based on specific acts, which could be considered habits and misconduct, and the care and custody of the child. Furthermore, the testimony of one of the police officers was offered for his firsthand knowledge and observation concerning the respondent's behavior to impeach directly the respondent's testimony with respect to his involvement with drugs. Therefore, the trial court did not abuse its discretion in admitting evidence of the respondent's arrest for drug and weapons possession.

### B

The respondent's final claim is that there is no evidence that he denied the child care, guidance or control as set forth in § 45a-610 (3). The essence of the respondent's argument is that because the acts of commission or omission that the trial court attributed to him did not affect the child adversely, the trial court should not have removed him as the child's guardian. The respondent's argument is without merit.

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. 'The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *In re Michael A.*, 47 Conn. App. 105, 109, 703 A.2d 1146 (1997).

Our review of the record reveals that the trial court admitted in evidence, among other things, the reports of the department and Campagno, who conducted extensive evaluations of the child, the petitioner and the respondent, and heard testimony from the parties, the child's half-sister and police officers familiar with the respondent. The trial court also interviewed the child twice in chambers. The trial court found by clear and convincing evidence that the respondent engaged in illegal activities. The respondent admitted to having a "beer buying club" and possession of cocaine on at least two occasions. On two occasions, the respondent was arrested on weapons charges, including once during the course of trial. The respondent admitted to participating in domestic violence when he lived with the child. He also sexually abused the child's half-sister.

The trial court's memorandum of decision makes clear that evidence concerning the respondent's arrests was not admitted to discredit him or to establish his reputation among the community. Rather the trial court stated explicitly that "the [respondent's] habits and misconduct . . . disrespect for the law and for the child's need for a safe and secure home has been a continuing course of conduct throughout the child's life, both while the child was in his care and continuing to the time of trial." The trial court also found that the child has been denied the proper care necessary for her well-being as a result of the respondent's habits and misconduct, and that it is not in the child's best interest for the respondent to exercise parental duties at this time. The record supports these findings.

The recommendations of the department and Campagna and, most important, the child's personal preference are that the child remain in the custody of the petitioner. Therefore, the trial court found that it was in the child's best interest to remain in the custody of

the petitioner where the child has found comfort and security since the death of her mother.

Because the record supports the trial court's conclusion that the evidence satisfies the clear and convincing standard of § 45a-610 as well as the best interest of the child standard of § 45a-605, we conclude that the trial court did not abuse its discretion in removing the respondent as guardian of the child and awarding custody to the petitioner.

The judgment is affirmed.

In this opinion the other judges concurred.