IN RE NELMARIE O. ET AL.*

(AC 26412)

Bishop, DiPentima and West, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

 

Argued March 21—officially released September 19, 2006

*Gerald B. Gore*, for the appellant (respondent mother).

*Patricia B. Johnson*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Elisabeth Borrino*, for the minor children.

*Jed N. Schulman*, guardian ad litem for the minor children.

*Opinion*

WEST, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights with respect to her two minor daughters, N and Y.[1] On appeal, the respondent claims that the court improperly (1) considered evidence gathered after the filing of the petitions for termination of parental rights and (2) found that she had failed to provide for the

---

[1] The court also terminated the parental rights of the respondent father, but he is not a party to this appeal. We therefore refer in this opinion to the respondent mother as the respondent.

emotional well-being of N and Y. We affirm the judgments of the trial court.

The respondent and the father are the biological parents of N and Y. The father also had a son, E, whose mother is deceased. E lived with the respondent, the father, N and Y. On September 23, 2003, the father brought E to a hospital. E was unconscious, malnourished, bruised and had a broken arm. He was approximately two and one-half years old when he died on September 26, 2003.

The petitioner, the commissioner of children and families, filed coterminous petitions for neglect and termination of parental rights with respect to N and Y pursuant to General Statutes § 17a-112 (*l*)[2] and Practice Book § 35-3a.[3] After a contested fourteen day hearing held over the course of six months and involving sixteen witnesses, the court issued a painstaking seventy-six page memorandum of decision. The court found that N and Y had seen the respondent and the father abuse E, and that the respondent had ordered N and Y to hit E with a sandal. There was no evidence, however, that the respondent and the father physically had abused N and Y. The court nonetheless found that the respondent and the father had failed to provide N and Y with "a safe home environment free of violence" and accordingly

[2] General Statutes § 17a-112 (*l*) provides in relevant part: "Any petition [for neglect] may be accompanied by or, upon motion by the petitioner, consolidated with a petition for termination of parental rights . . . . The Superior Court, after hearing . . . may, in lieu of granting the petition [for neglect] grant the petition for termination of parental rights . . . ."

[3] Practice Book § 35a-3 provides in relevant part: "When coterminous petitions are filed, the judicial authority first determines by a fair preponderance of the evidence whether the child is neglected, uncared for or dependent; if so, then the judicial authority determines whether statutory grounds exist to terminate parental rights by clear and convincing evidence; if so, then the judicial authority determines whether termination is in the best interest of the child by clear and convincing evidence. . . ."

granted the petitions for neglect and termination of parental rights.[4] The respondent then filed this appeal.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . . A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Jermaine S.*, 86 Conn. App. 819, 826–27, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005).

## I

The respondent first claims that the court improperly considered evidence gathered after the filing of the

[1] The respondent and the father are incarcerated in connection with E's death.

petitions for termination of parental rights on September 26, 2003. Because most of the evidence was gathered after that date, the respondent argues that the court should not have considered it pursuant to Practice Book § 35a-7 (a), which provides: "In the adjudicatory phase, the judicial authority is limited to evidence of events preceding the filing of the petition or the latest amendment, except where the judicial authority must consider subsequent events as part of its determination as to the existence of a ground for termination of parental rights."

It is clear that the respondent has based her claim on a misreading of the plain language of Practice Book § 35a-7 (a). That rule of practice refers to the "events preceding the filing of the petition," not the "evidence preceding the filing of the petition." Section 35a-7 (a) does not require the evidence of the "events" to have been gathered before the filing of the petition. In the present case, all of the "events" preceded the filing of the petitions because N and Y were removed from the custody of the respondent and the father on September 24, 2003, and the petitions were filed two days later. We conclude that the court complied with Practice Book § 35a-7 (a) and therefore reject the respondent's claim.[5]

II

The respondent next claims that the court improperly found that she had failed to provide for the emotional well-being of N and Y pursuant to § 17a-112 (j) (3) (C).

[5] As part of her claim, the respondent suggests that the evidence gathered after the filing of the petitions was not clear and convincing, but she limits her argument almost exclusively to the dates on which the evidence was gathered. The few sentences in her argument that do not concern the timing of the gathering of the evidence constitute inadequate briefing of her suggestion that the evidence was not clear and convincing, and we accordingly decline to review that issue. See *In re Haley B.*, 81 Conn. App. 62, 67–68, 838 A.2d 1006 (2004).

In support of her claim, the respondent points out that she did not physically abuse N and Y and that she was not the biological mother or legal guardian of E. Section 17a-112 (j), however, provides in relevant part that the court "may grant a petition [for termination of parental rights] if it finds by clear and convincing evidence . . . (3) that . . . (C) the child has been denied, by reason of an act or acts of parental commission or omission including, but not limited to . . . the care, guidance or control necessary for the child's physical, educational, moral or emotional well-being. . . ." That statute does not require that the children who are the subjects of the termination petition be abused physically. See *In re Sean H.*, 24 Conn. App. 135, 144, 586 A.2d 1171, cert. denied, 218 Conn. 904, 588 A.2d 1078 (1991). Furthermore, the respondent's relationship with E is not relevant to her claim. See id., 143–46.[6] We conclude that the court properly found that the respondent had failed to provide for the emotional well-being of N and Y by abusing E in their presence and ordering them to participate in the abuse.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[6] The respondent's reliance on *State* v. *Miranda*, 274 Conn. 727, 878 A.2d 1118 (2005), is unavailing. In that case, the defendant faced criminal charges stemming from his failure to protect his girlfriend's minor child from physical abuse by the child's mother. Although the relationship between the defendant and the abused child in *Miranda* was relevant to the issue of criminal liability, the relationship between the respondent and E in the present case has no bearing on the issue of whether the respondent denied N and Y the care, guidance or control necessary for their emotional well-being.